**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 230046-U

Order filed January 3, 2024

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-23-0046 Circuit No. 09-CF-1559 |
| MATTHEW T. EDWARDS, | ) ) ) | Honorable Amy M. Bertani-Tomczak, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HETTEL delivered the judgment of the court.
Presiding Justice Holdridge and Justice Brennan concurred in the judgment.

**ORDER**

¶ 1      *Held*: The circuit court complied with this court's mandate on remand, and defendant's sentence was not excessive.

¶ 2      Defendant, Matthew T. Edwards, appeals a resentencing order from the Will County circuit court reimposing a 90-year sentence for first degree murder and attempted first degree murder. Defendant argues the court failed to comply with our directions for resentencing on remand by not properly considering his youth and its attendant characteristics pursuant to the

statutory juvenile sentencing guidelines. Defendant further contends that his sentence is excessive. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4    After a stipulated bench trial, defendant was convicted and sentenced to consecutive terms of 50 years' imprisonment for first degree murder (720 ILCS 5/9-1(a)(1) (West 2008)) and 40 years' imprisonment for attempted first degree murder (*id.* § 8-4(a), 9-1(a)(1)). Defendant's convictions stemmed from events that occurred during the early morning hours on July 7, 2009. On that date, defendant and his codefendant, Jason Orasco, were driven by two other accomplices to the apartment of Joshua Terdic and Lauren Vasilakis. Defendant and Orasco broke into the apartment looking for money and drugs. When they found only a small amount of both, they woke up the victims and demanded more. Terdic and Vasilakis were tied up, ordered to lie on their stomachs, and a pillow was placed over their heads. Defendant asked Orasco if they should use a baseball bat to knock them out. Orasco said "no" and that defendant should "just do it." Defendant then shot both victims in the head. Terdic died as a result of the shooting. Vasilakis survived.

¶ 5    Defendant appealed, claiming, *inter alia*, that because he was 17 years old when the offenses were committed, his sentence was unconstitutional as a *de facto* life sentence under *Miller v. Alabama*, 567 U.S. 460 (2012) (prohibiting mandatory life sentences for offenders under the age of 18). We affirmed defendant's convictions and sentence but instructed the circuit court to grant defendant one additional day of presentence incarceration credit. *People v. Edwards*, 2015 IL App (3d) 130190. Our supreme court issued a supervisory order directing us to vacate and reconsider our judgment in light of *People v. Reyes*, 2016 IL 119271. *People v. Edwards*, No. 119332 (Ill. Nov. 23, 2016) (supervisory order). After doing so, we concluded that

2

*Reyes* did not warrant a different result and affirmed as modified. *People v. Edwards*, 2017 IL App (3d) 130190-B, ¶ 7. In a subsequent supervisory order, our supreme court directed us to vacate and reconsider our judgment in light of *People v. Buffer*, 2019 IL 122327 (holding juvenile prison sentences over 40 years constitute *de facto* life sentences and cannot be imposed without the court first considering a defendant's youth and its attendant characteristics). *People v. Edwards*, No. 122028 (Ill. Mar. 25, 2020) (supervisory order). After doing so, we held that *Buffer* required that defendant's sentence be vacated and remanded the matter to the circuit court for resentencing. *People v. Edwards*, 2021 IL App (3d) 130190-C, ¶ 78. Specifically, we concluded that the circuit court did not consider defendant's youth and its attendant characteristics in imposing a *de facto* life sentence. *Id.* We directed the circuit court to resentence defendant pursuant to section 5-4.5-105 of the Unified Code of Corrections (Code) (730 ILCS 5/5-4.5-105 (West 2016)); *Edwards*, 2021 IL App (3d) 130190-C, ¶ 78.

¶ 6        The circuit court held a resentencing hearing on September 29, 2022. Defendant's brother testified regarding the abuse and neglect defendant suffered as a child. He stated that defendant and his siblings were fed inedible canned food and were hit with a leather whip their mother had cut into a "v" shape to prevent leaving visible marks. On one occasion, their mother hit defendant with a bat so hard that it broke. When their mother consumed alcohol, she often threatened defendant and would tell him she wished he had never been born. Defendant and his siblings also witnessed physical abuse inflicted on their mother by her boyfriends. The family did not have a stable home and moved frequently. Defendant's mother stopped providing housing for him when he was 16 years old. One of defendant's friends, and defendant's neighbor, Linda Vetor-Gaydos, also testified in mitigation that they had each allowed defendant to stay with them on separate occasions because he did not have adequate shelter and was living

in a tent. Defendant was staying in Vetor-Gaydos's basement at the time of the offenses and her daughter was one of defendant's accomplices.

¶ 7 Defendant gave a statement in allocution. He began by reiterating much of his brother's testimony about the abuse he had been subjected to by their mother. Defendant added that he had been diagnosed with attention deficit hyperactivity disorder (ADHD) and prescribed Ritalin in elementary school, but his mother stopped giving him the medication because she said it made him hyper. Defendant also spoke about attending the Lincoln's Challenge Academy as a teenager and how he aspired to attend culinary school after graduation. After finishing the Lincoln's Challenge program, defendant lived with his brother on a military base in Kansas but returned to Illinois homeless when his brother was deployed. Defendant acknowledged his difficult upbringing did not justify his conduct and recognized that he caused "harm and hurt to many including myself and my family too." Defendant stated he deserved the 13 years in jail he had served thus far and noted he had obtained his general education diploma (GED) and attended drug counseling and anger management courses during that time. Defendant admitted he had been involved in several fights while incarcerated but had tried to help keep other inmates out of trouble. Defendant stated that if he were released, he planned to attend school to become a licensed barber.

¶ 8 The parties then presented their arguments. The State first briefly discussed the potential sentencing ranges with the court and confirmed that the firearm enhancements for both convictions were now discretionary. The State further advised that as long as the court considered the statutory factors under section 5-4.5-105 of the Code, it was not precluded from resentencing defendant to a *de facto* life sentence and asked that the original 90-year sentence be reimposed. The State emphasized that the crime was premeditated, noting steps defendant and

4

Orasco took to carry out their plan, such as cutting the phone lines to the apartment complex prior to the break-in. The State summarized Vasilakis's testimony from Orasco's trial, recounting that during the 45 minutes defendant held them at gunpoint he told her he had no remorse and had killed his own sister. Defendant said he would shoot both her and Terdic, walk away laughing, and never think of them again. The State also argued that there was no indication that defendant suffered from mental illness at the time of the offenses based on the psychological evaluation, although there was a history of behavioral problems consistent with conduct disorder, which included setting fire to his bed at age five and repeatedly abusing the family dog.

¶ 9　　　　Defendant's counsel argued defendant had no prior criminal history. Defendant's updated presentence investigation report (PSI) indicated that in addition to ADHD, defendant had also been subsequently diagnosed with depression, bipolar disorder, and mood disorder. Additionally, defendant had been prescribed medication but was not taking it the day of the offenses because he could not afford it. Defense counsel asserted that although Orasco was an older negative influence who told defendant to shoot the victims, defendant had taken full responsibility for his actions. Counsel also stressed defendant's potential for rehabilitation based on his youth and that he had obtained his GED, attended counseling, and learned re-entry and barber skills while incarcerated. The court adjourned at the close of arguments, taking the matter under advisement.

¶ 10　　　　The court reconvened on October 24, 2022. The court began by stating that it had reviewed witness testimony, defendant's psychological evaluation and PSI, activity logs from the jail, defendant's GED, victim impact statements, and character letters submitted on defendant's behalf. Additionally, the court had reviewed defendant's statement in allocution, noting that "defendant did not present any evidence as to his good conduct while serving his sentence as far as any programs or anything like that." The court then remarked that defendant's initial sentence

included firearm enhancements based on defendant's possession and use of a gun in committing the offenses.

¶ 11    After explaining that the cause had been remanded for resentencing for the court to consider defendant's youth and its attendant characteristics pursuant to section 5-4.5-105 of the Code, the court continued as follows:

"As a Circuit Court Judge for 28 years it has been my practice then and now and at the time of your first sentencing hearing to consider all of offender's views and attendant characteristics. It has been my practice to consider an offender's level of maturity, any cognitive or developmental disability, peer pressure, background, education, neglect or abuse and rehabilitative potential.

I also considered the circumstance of the offense, the dress of participation and specific role of the offender and any prior criminal history.

The Court was present when Lauren Vasilakas testified at the co-defendant's trial. Her account of what happened to her and Joshua Terdic was horrific. Lauren Vasilakis testified that the defendant had the firearm; that you shot Mr. Terdic in the head while he was bound on the bed on his stomach with a pillowcase on his head. You just then shot Lauren Vasilakas while she was bound on the bed, tied, bound with a pillowcase on her head as she lied next to Mr. Terdic.

Lauren Vasilakas testified that the gun the defendant used was misfired or clicked one or two times, and then she heard another shot and realized she was shot. This all happened in the middle of the night after you and your co-defendant broke into their home to rob them.

6

Ms. Vasilakas has survived, but Mr. Terdic did not.

I have considered the factors in aggravation and mitigation and the factors set forth in Chapter 730 Section 5/5-4.5-105, I have considered your youth and its attendant characteristics, and the original sentence imposed on February 27th, 2013, will stand."

Defendant filed a motion to reconsider. In denying defendant's motion, the court stated that it had received no new information regarding defendant's accomplishments in the Department of Corrections, noting "everything that was presented by you was presented at the original sentencing." Defendant appealed.

¶ 12                                    II. ANALYSIS

¶ 13        Defendant first argues the circuit court failed to comply with our mandate for resentencing by not considering the statutory factors contained in section 5-4.5-105 of the Code. On remand, "a trial court must obey the clear and unambiguous directions in a mandate issued by a reviewing court." *People ex rel. Daley v. Schreier*, 92 Ill. 2d 271, 276 (1982). Whether the court has complied with our mandate is a matter of law we review *de novo*. *Clemons v. Mechanical Devices Co.*, 202 Ill. 2d 344, 351-52 (2002).

¶ 14        Our mandate directed the court to resentence defendant in accordance with section 5-4.5-105 of the Code. Under this statute, the court must consider youth-based factors in mitigation when sentencing juvenile offenders and the decision to impose firearm enhancements is discretionary. 730 ILCS 5/5-4.5-105 (West 2022). Established in *Miller*, the youth-based factors codified under section 5-4.5-105 include: (1) the age and maturity at the time of the offense; (2) familial pressure, peer pressure, or negative influences; (3) family and home environment, educational and social background, and history of abuse, neglect, or trauma; (4) rehabilitation

7

evidence and potential; (5) the circumstances of the offense; (6) the degree of participation and role in the offense; (7) ability to meaningfully participate in their defense; (8) prior juvenile or criminal history; and (9) any other relevant and reliable information, including an expression of remorse. *Id.* § 5-4.5-105(a). Proper consideration of these nine factors does not require the court to analyze each factor on the record before imposing its sentence. *People v. Jones*, 2019 IL App (1st) 170478, ¶ 55. Moreover, we presume the court has considered the mitigating factors presented, unless the record reflects otherwise. *Id.* ¶ 54.

¶ 15        Reviewing the evidence and arguments presented at defendant's resentencing hearing, we find the court followed our mandate by considering defendant's youth and its attendant characteristics pursuant to section 5-4.5-105 of the Code. The record reflects that the court received significant evidence of defendant's youth and its attendant characteristics before it and there is nothing in the record to indicate the court did not consider the mitigating factors presented. That the court found defendant's evidence in mitigation presented at resentencing to be largely the same in substance as the evidence presented at defendant's initial sentencing does not demonstrate that the *Miller* factors were not considered. To the contrary, the court specifically stated on the record that in reaching its decision, it had reviewed all of the evidence presented and considered the statutory factors in aggravation and mitigation, including the youth based factors under section 5-4.5-105 of the Code.

¶ 16        Defendant further contends that the court abused its discretion when it imposed the same 90-year sentence on remand, arguing the sentence is excessive because it far exceeds the minimum sentence now that the firearm enhancements are discretionary. In asserting that the evidence of his mitigating circumstances outweighed the seriousness of the offense to the degree

8

that it warranted a lesser sentence on remand, defendant asks us to reweigh the sentencing factors, which we will not do. See *People v. Hageman*, 2020 IL App (3d) 170637, ¶ 20.

¶ 17    "If a sentence is within the statutory range, we presume it is not excessive." *People v. Busse*, 2016 IL App (1st) 142941, ¶ 27. A circuit court's sentencing decision is given great deference and will not be altered by a reviewing court absent an abuse of discretion. *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). A sentence is deemed excessive and an abuse of discretion where it is "greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." *People v. Stacey*, 193 Ill. 2d 203, 210 (2000).

¶ 18    Here, defendant's first degree murder conviction carried a sentencing range of 20 to 60 years' imprisonment. See 730 ILCS 5/5-4.5-20(a)(1) (West 2022). Defendant's attempted murder conviction carried a sentencing range of 6 to 30 years' imprisonment. See *id.* § 5-4.5-25(a). Additionally, each conviction was also subject to a discretionary firearm enhancement of 25 years. In imposing defendant's original 90-year term of imprisonment at resentencing, the court was well within the sentencing guidelines and well below the potential total maximum sentence of 140 years. Therefore, defendant's sentence is presumptively valid. Moreover, in sentencing defendant, the court made it clear that it considered all the evidence before it. The most important factor in fashioning a sentence is the seriousness of the offense. *People v. Willis*, 2013 IL App (1st) 110233, ¶ 123. When sentencing defendant, the court went into detail regarding the gruesome nature of the offense. While defendant may believe that his mitigating evidence and rehabilitative potential outweighed the seriousness of the offense and required a lower sentence, the court was not required to agree. We cannot say that defendant's sentence was greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense, and the court did not abuse its discretion in sentencing him. Furthermore,

9

as we have determined the court properly considered defendant's youth and its attendant characteristics at resentencing, the court was within its discretion to impose the same sentence on remand. See *People v. Raya*, 267 Ill. App. 3d 705, 709 (1994) (sentences vacated on appeal and remanded for resentencing should not be construed as a mandate for the circuit court to impose a lesser sentence).

¶ 19                                    III. CONCLUSION

¶ 20            The judgment of the circuit court of Will County is affirmed.

¶ 21            Affirmed.